## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRIAN DILLON,<br><br>            Plaintiff,<br><br>v.<br><br><br>HELIX TECHNOLOGIES, INC., ZACHARY L. VENEGAS, SCOTT OGUR, GARVIS W. TOLER III, STEVE JANJIC, PAUL E. HODGES, ANDREW SCHWEIBOLD, and SAT JOSHI,<br><br><br>            Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiff Brian Dillon ("Plaintiff") by and through his undersigned attorneys, brings this action on behalf of himself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Helix Technologies, Inc. ("Helix" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning Helix and the Defendants.

## SUMMARY OF THE ACTION

1. This is an action brought by Plaintiff against Helix and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed merger of the Company with Medical Outcomes Research Analytics, LLC ("MOR") (the "Proposed Transaction").

2. On October 16, 2020, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with MOR and Forian Inc. ("Forian"). Pursuant to the terms of the Merger Agreement a subsidiary of Forian will merge with an into Helix, with Helix, following the merger, to be the surviving corporation and a wholly-owned subsidiary of Forian. Immediately prior to the consummation of the Helix merger, Forian and MOR will engage in a reorganization, pursuant to which the holders of the equity interests of MOR will exchange their MOR ownership interests for Forian common stock. This reorganization will result in MOR also becoming a wholly owned subsidiary of Forian. Further, all of the outstanding shares of Helix preferred stock as well as certain outstanding convertible notes of Helix to be converted into Helix common stock. Afterward, at the effective time of the Helix merger, each outstanding share of Helix common stock will be converted into the right to receive 0.05 shares of Forian common stock.

3. On February 11, 2021, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading proxy statement with the SEC (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Helix and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Helix shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6. This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, the owner of Helix shares.

9. Defendant Helix is incorporated under the laws of Delaware and has its principal executive offices located at 10200 E. Girard Avenue, Suite B420, Denver, Colorado 80231. The Company's common stock trades on the OTCQB under the symbol "HLIX."

10. Defendant Zachary L. Venegas ("Venegas") is and has been the Chief Executive Officer and Chairman of the Board of Helix at all times during the relevant time period.

11. Defendant Scott Ogur ("Ogur") is and has been the Chief Financial Officer and a director of Helix at all times during the relevant time period.

12. Defendant Garvis W. Toler III ("Toler") is and has been a director of Helix at all times during the relevant time period.

13. Defendant Steve Janjic ("Janjic") is and has been a director of Helix at all times during the relevant time period.

14. Defendant Paul E. Hodges ("Hodges") is and has been a director of Helix at all times during the relevant time period.

15. Defendant Andrew Schweibold ("Schweibold") is and has been a director of Helix at all times during the relevant time period.

16. Defendant Sat Joshi ("Joshi") is and has been a director of Helix at all times during the relevant time period.

17. Defendants Venegas, Ogur, Toler, Janjic, Hodges, Schweibold, and Joshi are collectively referred to herein as the "Individual Defendants."

18. The Individual Defendants, along with Defendant Helix, are collectively referred to herein as "Defendants."

**SUBSTANTIVE ALLEGATIONS**

**Background of the Company**

19. Helix is a provider of critical infrastructure services, helping owners and operators of licensed cannabis businesses stay competitive and compliant while mitigating risk. Through its proprietary technology suite, Helix provides comprehensive supply chain management, and compliance tools, for any license type in any regulated cannabis market. While Helix provides services to the cannabis industries, Helix does not deal directly with the plant or any derivative products. Helix's industry-leading compliance and point of sale technologies are tailored to the unique needs of the quickly evolving cannabis industry, offering customers seamless compliance management solutions.

**The Company Announces the Proposed Transaction**

20. On October 19, 2020, the Company jointly issued a press release announcing the Proposed Transaction. The press release stated in part:

> DENVER and NEWTOWN, PA, Oct. 19, 2020 (GLOBE NEWSWIRE) -- via **NewMediaWire** -- Helix Technologies, Inc. (OTCQB: **HLIX**) and Medical Outcomes Research Analytics, LLC (MOR Analytics) today announced they have entered into an agreement to combine, creating an innovative healthcare information, analytics and technology organization. The combination will be accomplished by both companies becoming wholly owned subsidiaries of a newly formed company, Forian Inc. Upon completion of the all-stock transaction, MOR Analytics members will own approximately 72 percent and Helix shareholders will own approximately 28 percent of the combined company on a fully diluted basis. Helix shareholders will receive .027 shares of Forian common stock for each share of Helix common stock. The Forian shares received by the Helix shareholders and MOR Analytics members in the merger are expected to be treated as a tax-free exchange for federal income tax purposes. Additionally, at the time of the combination, it is expected that Forian will have in excess of $10 million in cash available. Forian will not incur any new debt to affect the combination.
>
> "We are thrilled to add Helix's unique technology and information assets to our innovative de-identified patient health data and analytics platform. We have

created the nation's only HIPAA compliant, Real World Evidence platform integrating cannabis and de-identified healthcare data designed to support SaaS based business performance analytics, product safety and efficacy surveillance solutions, and evidence-based health outcomes research. Our U.S.-based healthcare and cannabis clients can leverage data-driven insights to achieve improved patient health outcomes and business performance. We are excited to welcome the Helix platform and recognize the top-tier results produced by Zachary and his team over the last several years," said MOR Analytics Chief Executive Officer, Dan Barton.

"As Helix has grown into one of the leading global providers of software used in the cannabis industry, we have prioritized value-added solutions, innovation, and outstanding execution at every opportunity. With today's important announcement, this commitment is being taken to the next level. Joining with MOR adds a completely new and critical dimension to Helix's capabilities that will further advance the commercial success of customers using our BioTrack and Cannalytics technology suites," said Helix's CEO Zachary Venegas.

MOR Analytics was founded by WebMD alumni Adam Dublin and Max Wygod, and its early financings were led by visionary healthcare entrepreneur Marty Wygod. Over the last four decades, Marty Wygod has delivered some of the most innovative and successful publicly-traded healthcare companies (Medco, Emdeon, and WebMD, among others) addressing the needs of patients, physicians, and life science companies while utilizing technology and data to reduce the cost of healthcare for millions across the globe.

**Strategic Rationale**

MOR Analytics and Helix believe there are significant synergistic opportunities to create value by combining Helix's operating software business and proprietary data assets with MOR's proprietary data and proven experience in data architecture, technology, and analytics. Specifically, the merger will create the largest proprietary, integrated, HIPAA-compliant U.S. cannabis Real World Evidence and commercial analytics platform that will:

- Deliver evidence-based insight into the safety and efficacy of ethical pharmaceuticals and cannabis products to equip physicians, caregivers, cannabis stakeholders, and patients with credible evidence to improve patient care and health outcomes through access to observational research.
- Provide a SaaS-based platform serving multiple verticals including life sciences, government, payers, providers and cannabis dispensaries, manufacturers and cultivators with the information and intelligence to better understand their products, customers, and the dynamics of a rapidly changing marketplace to drive commercial performance across segments.
- Empower regulators to more granularly assess the safety, health, social and economic outcomes associated with all therapeutic options as the

- cannabis market scales and cannabinoid-based therapies are adopted as mainstream therapeutic alternatives.
- Deliver the most advanced data management, software and analytics products to power the business performance of Helix's large and growing, installed customer base.

**Management, Governance and Headquarters**

The combined company expects to maintain headquarters in Newtown, PA, with offices in Fort Lauderdale, FL and Denver, CO. Dan Barton, Chief Executive Officer of MOR Analytics, will become Chief Executive Officer of the combined organization. Max Wygod, co-founder of MOR Analytics, will become Executive Chairman of the Board. Adam Dublin, co-founder of MOR Analytics, will become Chief Strategy Officer and Director. Zachary Venegas, Executive Chairman and Chief Executive Officer of Helix, and Scott Ogur, Chief Financial Officer of Helix, will continue to lead Helix alongside MOR executives. Forian's Board of Directors will initially be comprised of a total of 11 directors, including Marty Wygod, Max Wygod, Adam Dublin, Dan Barton of MOR Analytics, Scott Ogur of Helix, and six new independent directors.

**Approvals and Time to Close**

The transaction is subject to customary closing conditions, including regulatory approvals and approval by Helix's shareholders, and is expected to close in the first quarter 2021. Forian expects to apply and be listed on the Nasdaq Stock Exchange. Helix shareholders representing approximately 45% of the currently outstanding voting common shares have entered into agreements to vote their shares in favor of the transaction.

**Advisors**

Helix's legal advisors are Nelson Mullins Riley & Scarborough LLP. MOR Analytics' legal advisors are Duane Morris LLP.

## FALSE AND MISLEADING STATEMENTS AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT

21. On February 11, 2021, the Company authorized the filing of the Proxy Statement with the SEC. The Proxy Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

22. Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not

contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding the Company's Financial Projections

23. The Proxy Statement contains projections prepared by the Company's and MOR's management concerning the Proposed Transaction, but fails to provide material information concerning such.

24. The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1] Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[2] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

25. In order to make management's projections included in the Proxy Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

26. Specifically, with respect to the Company's projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including, but not limited to EBIT.

27. Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction. Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding MPI's Financial Opinion

28. The Proxy Statement contains the financial analyses and opinion of Management Planning Inc. ("MPI") concerning the Proposed Transaction, but fails to provide material information concerning such.

29. With respect to MPI's *Analysis of Selected Publicly Traded Companies* for Helix, the Proxy Statement fails to disclose the individual multiples and metrics for each of the companies observed in the analysis.

30. With respect to MPI's *Discounted Cash Flow Analysis* for Helix, the Proxy Statement fails to disclose: (i) the unlevered free cash flows that Helix was forecasted to generate during fiscal years 2020 through 2023; (ii) the basis for MPI's application of terminal multiples of revenue, for the government and commercial segments, ranging from 0.75x to 1.75x; and (iii) the inputs and

assumptions underlying MPI's selection of the range of discount rates of 20% to 24% and 25% to 29%.

31. With respect to MPI's *Analysis of Selected Publicly Traded Companies* for MOR, the Proxy Statement fails to disclose the individual multiples and metrics for each of the companies observed in the analysis.

32. With respect to MPI's *Discounted Cash Flow Analysis* for MOR, the Proxy Statement fails to disclose: (i) the unlevered free cash flows that MOR was forecasted to generate during fiscal years 2020 through 2025; (ii) the basis for MPI's application of terminal multiples of EBITDA for the cannabis and life sciences segments ranging from 11.0x to 15.0x; and (iii) the inputs and assumptions underlying MPI's selection of the range of discount rates of 23% to 27% and 19% to 23%.

33. Lastly, the Proxy Statement notes that MPI "will receive a fee of $120,000" for services rendered, but fails to disclose the timing that such payment will be made.

34. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

35. Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions. Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding MPI's Financial Opinion

36. The Proxy Statement describes the sales process leading up to the Proposed Transaction, but fails to disclose material information concerning such.

37. The Proxy Statement fails to disclose whether the Company entered into any confidentiality agreements that contained "don't-ask, don't waive" or standstill provisions, and if so, the specific conditions, if any, under which such provisions would fall away or prevent parties from submitting a bid.

38. The Proxy Statement fails to disclose the first time there was discussion concerning consulting agreements between Forian and the CEO and CFO of Helix.

39. Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions. Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

### COUNT I

### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

40. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or

authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

42. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

43. Defendants have issued the Proxy Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

44. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

45. The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

46. The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

47. The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

48. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

49. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**(Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act)**

50. Plaintiff incorporates each and every allegation set forth above as if fully set forth

herein.

51. The Individual Defendants acted as controlling persons of Helix within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Helix, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

52. Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

54. In addition, as set forth in the Proxy Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated

in drafting and/or gave their input on the content of those descriptions.

55. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

57. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. Directing the Individual Defendants to disseminate an Amendment to the Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C. Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: February 16, 2021                                    Respectfully submitted,

                                                                                         By: */s/ Joshua M. Lifshitz*
                                                                                         Joshua M. Lifshitz
                                                                                         Email: jml@jlclasslaw.com
                                                                                        **LIFSHITZ LAW FIRM, P.C.**
                                                                                        1190 Broadway
                                                                                        Hewlett, New York 11557
                                                                                        Telephone: (516) 493-9780
                                                                                        Facsimile: (516) 280-7376

                                                                                        *Attorneys for Plaintiff*